IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

WISCONSIN CARRY, INC., DAVID BERNSON,
and FRANK HANNAN ROCK,

      Plaintiffs,

      v.          Case No. 10-C-0009

JAMES DOYLE, in his official capacity as
Governor of the State of Wisconsin, CITY OF
MILWAUKEE, CITY OF RACINE, KURT
KEZESKE, SGT. NETHERY, and R. PRINCE,

      Defendants.

BRIEF IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT JAMES DOYLE

INTRODUCTION

Defendant James Doyle, in his official capacity as Governor of the State of Wisconsin, by Assistant Attorney General Thomas C. Bellavia, has moved this Court to dismiss all claims against him in this action, pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and the Eleventh Amendment to the United States Constitution.

As grounds for dismissal, Governor Doyle contends, first, that this Court lacks subject-matter jurisdiction over any of the claims asserted against him because the Complaint in this case does not allege a case or controversy, within the meaning of Article III of the United States Constitution, between any of the plaintiffs and the Governor. Second, Governor Doyle contends that all of the claims that have been asserted against him are also barred by the Eleventh Amendment immunity of the State of Wisconsin. Third, Governor Doyle contends that the Complaint in this case fails to state a claim upon which relief can be granted against him because it

does not allege a causal relationship between any claimed injury to a legally protected interest of any of the plaintiffs and any action or possible action by the Governor.

## STATEMENT OF FACTS AND OF THE CASE[1]

On January 8, 2010, plaintiffs Wisconsin Carry, Inc. ("WCI"), David Bernson ("Bernson"), and Frank Hannan Rock ("Hannan Rock") filed the present action, pursuant to 42 U.S.C. § 1983, seeking damages and declaratory and injunctive relief for alleged violations of the United States Constitution. Their Complaint alleges that Wisconsin's Gun Free School Zones Act, Wis. Stat. § 948.605, is unconstitutional on its face and as applied to them. Plaintiffs Bernson and Hannan Rock also allege that they have been subjected to unreasonable searches and seizures and have been deprived of property without due process of law.

Plaintiff WCI is a Wisconsin non-profit corporation dedicated to promoting the rights of its members to keep and bear arms under the United States Constitution and the Wisconsin Constitution. Complaint, ¶¶ 5 and 40. Plaintiff Bernson is a resident of Arizona, a former resident of Milwaukee, Wisconsin, and a member of WCI. *Id.*, ¶¶ 6 and 16. Plaintiff Hannan Rock is a resident of Racine, Wisconsin, and a member of WCI. *Id.*, ¶ 7

Defendant James Doyle is sued in his official capacity as Governor of the State of Wisconsin. *Id.*, ¶¶ 8 and 43-44. The other defendants named in the Complaint are: the City of Milwaukee, Wisconsin; the City of Racine, Wisconsin; Officer Kurt Kezeske of the City of Milwaukee Police Department; Sergeant Jessie Nethery of the City of Racine Police Department; and Officer Richard Prince of the City of Racine Police Department. *Id.*, ¶¶ 9-13.

---

[1] On a motion to dismiss, the factual allegations in the Complaint are assumed to be true. For all other purposes, Governor Doyle retains his right to dispute the truth of any allegations he has not specifically admitted.

The factual allegations in the Complaint with regard to Bernson are as follows. On May 14, 2008, Officer Kezeske, acting without a warrant, arrested Bernson either within Bernson's home or within the curtilage of Bernson's residence which, at that time, was in Milwaukee, Wisconsin. *Id.*, ¶¶ 14-17. After arresting Bernson, Officer Kezeske transported him to a police station of the Milwaukee Police Department. *Id.*, ¶ 23. Bernson was subsequently released from police custody without being charged. *Id.*

Contemporaneous with the arrest of Bernson, Officer Kezeske, acting without a warrant, conducted a search of Bernson's residence and his automobile. *Id.*, ¶¶ 19-22. That search resulted in the seizure, by Officer Kezeske, of a handgun and other personal property belonging to Bernson. *Id.*, ¶¶ 18-19. Bernson subsequently, on an unspecified date, filed a petition requesting the return of his property. *Id.*, ¶ 24. The Complaint does not indicate with whom that petition was filed but, by inference, it appears that it must have been filed with the Milwaukee Police Department or the city of Milwaukee. The petition was subsequently denied, in part because Bernson allegedly had possessed the handgun at a gasoline station that is located within 1,000 feet of a school in the city of Milwaukee. *Id.*, ¶ 25.

On September 21, 2009, and September 23, 2009, respectively, Bernson's attorney wrote to the Milwaukee County District Attorney's office and to the City of Milwaukee's legal department, requesting the return of Bernson's property. *Id.*, ¶ 26. The City of Milwaukee responded by recommending that Bernson contact the District Attorney. *Id.*, ¶ 27. The District Attorney did not respond. *Id.*, ¶ 28. As of the date of the filing of the Complaint in this matter, the City of Milwaukee continued to retain custody of the property seized from Bernson on May 14, 2008. *Id.*, ¶ 29.

The factual allegations in the Complaint with regard to Hannan Rock are as follows. On September 9, 2009, Hannan Rock was on the front porch of his home, which is located within 1,000 feet of a school in Racine, Wisconsin. *Id.*, ¶¶ 30 and 38. Sergeant Nethery and Officer Prince approached Hannan Rock and asked him his name. *Id.*, ¶ 31. Hannan Rock declined to provide his name and Sergeant Nethery and Officer Prince, acting without a warrant, then arrested Hannan Rock for obstructing an officer. *Id.*, ¶¶ 32 and 35. The arrest took place within the curtilage of Hannan Rock's residence. *Id.*, ¶ 36. Contemporaneous with that arrest, Sergeant Nethery and Officer Prince, acting without a warrant, also seized a firearm belonging to Hannan Rock. *Id.*, ¶¶ 33-35.

The Racine County District Attorney ultimately decided not to prosecute Hannan Rock. *Id.*, ¶ 37. The District Attorney did, however, warn Hannan Rock that, because he lives within 1,000 feet of a school, police will have probable cause to arrest Hannan Rock at his home any time that he is in possession of a firearm and refuses to identify himself to police officers. *Id.*, ¶ 38. The City of Racine retained possession of Hannan Rock's firearm for several weeks before returning it. *Id.*, ¶ 39.

The Complaint alleges that the arrests of Bernson and Hannan Rock, the search of Bernson's automobile, and the seizure and retention of property belonging to Bernson and Hannan Rock, violated the rights of Bernson and Hannan Rock under the Fourth and Fourteenth Amendments to the United States Constitution. *Id.*, ¶¶ 45-48 and 50-52.

The Complaint further alleges that the refusal to return Bernson's property because he allegedly possessed a firearm at a gas station located within 1,000 feet of a school is an unconstitutionally overbroad application to Bernson of Wisconsin's Gun Free School Zone Act. *Id.*, ¶ 49. The Complaint likewise alleges that the threat to arrest Hannan Rock at his home any

time that he is in possession of a firearm and refuses to identify himself to police officers is an unconstitutionally overbroad application to Hannan Rock of Wisconsin's Gun Free School Zone Act. *Id.*, ¶ 53. Finally, the Complaint alleges that Wisconsin's Gun Free School Zone Act, on its face, deprives plaintiffs' of a meaningful right to bear arms. *Id.*, ¶ 54.

The Complaint requests that damages be paid to Bernson and Hannan Rock for their wrongful arrests, searches, and seizure and retention of their property. The Complaint also asks that the Wisconsin Gun Free School Zone Act be declared unconstitutional, both on its face and as applied to Bernson, to Hannan Rock, and to members of WCI. The Complaint further asks that enforcement of the Wisconsin Gun Free School Zone Act be enjoined and that the Defendants be specifically enjoined from denying the Plaintiffs the right to carry firearms in their own homes.

## ARGUMENT

### I. THE COMPLAINT DOES NOT PRESENT AN ARTICLE III CASE OR CONTROVERSY BETWEEN THE PLAINTIFFS AND GOVERNOR DOYLE.

It is a bedrock principle of federal law that Article III of the United States Constitution gives a federal court jurisdiction over a claim between a plaintiff and a defendant only if the claim presents a "case or controversy." *See Raines v. Byrd*, 521 U.S. 811, 818 (1997). This requirement is especially stringent when, as in the present case, the claim challenges the validity of a state statute. *See Wisconsin Env. Decade v. State Bar of Wisconsin*, 747 F.2d 407, 411 (7th Cir. 1984), *cert. denied*, 105 S. Ct. 2324 (1985). The power of federal courts to declare laws invalid is based on their power and duty to resolve concrete disputes properly brought before them for decision. *See Younger v. Harris*, 401 U.S. 37, 52 (1971); *United States v. Raines*,

362 U.S. 17, 20 (1960). Federal courts thus have no power to speculate on hypothetical or imaginary situations, but may only pass judgment on a statute where such action is necessary in order to correctly apply it to a concrete case. *See id*.; *see also Valley Forge, Etc. v. Americans United, Etc.*, 454 U.S. 464, 471 (1982).

In order to establish a case or controversy sufficient to give a federal court jurisdiction over their claims, plaintiffs must meet three criteria:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'". . . . Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and footnote omitted). If any one of these elements is absent, the court lacks jurisdiction over the plaintiffs' claims. *See Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc). An actual case or controversy must be present, not only at the time a complaint is filed, but at all stages of the litigation. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).

It follows from these principles that a case or controversy under Article III not only must be brought *by* a proper plaintiff (*i.e.*, one who has suffered "injury in fact"), but also must be brought *against* a proper defendant. Standing to defend, no less than standing to sue, demands that the litigant possess a direct stake in the controversy. *See Arizonans for Official English*, 520 U.S. at 64. That is, the complaint must name a defendant to whose conduct plaintiff's alleged injury can be traced and against whom the court could issue a remedy that would be likely to redress that injury. The Seventh Circuit has applied this principle to cases like this one, where

plaintiffs claim to be aggrieved by the application of a legal rule, holding that the proper defendant is not the government entity that created the rule, but rather the person who applies the rule to the plaintiff and who thereby performs the acts that injure the plaintiff. *See E.E.O.C. v. State of Ill.*, 69 F.3d 167, 170 (7th Cir. 1995); *Quinones v. City of Evanston, Ill.*, 58 F.3d 275, 277 (7th Cir. 1995).

A state official who is not himself responsible for enforcing a challenged state statute thus is not a proper defendant. *See Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004); *Shell Oil Co. v. Noel*, 608 F.2d 208, 213 (1st Cir. 1979); *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1157 (10th Cir. 2005). In order to establish a controversy sufficient to support federal court jurisdiction under Article III, a plaintiff who seeks to enjoin the enforcement of a statute must sue a government official who is charged with specific duties of enforcement relating to that statute and who has taken or threatened some enforcement-related action vis-à-vis the plaintiff. *See Okpalobi*, 244 F.3d at 426-27. In accordance with these principles, this Court has previously dismissed claims against Wisconsin's Attorney General because that officer had no power to enforce the Wisconsin statute that was alleged to be unconstitutional. *See Deida v. City of Milwaukee*, 192 F. Supp.2d 899, 912 (E.D. Wis. 2002).

The general executive authority of a state Governor to enforce the laws of the state is thus in itself insufficient to establish an actual controversy for Article III purposes. *See J.N.S., Inc. v. State of Ind.*, 712 F.2d 303, 305 (7th Cir. 1983) ("a litigant must establish a more immediate threat than simply a general policy of enforcing laws"); *1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 112-16 (3d Cir. 1993) (no case or controversy between plaintiff and state defendants where the latter had no enforcement responsibility other than their general duty to uphold the laws); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that

a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute.") *Back v. Carter*, 933 F. Supp. 738, 752-53 (N.D. Ind. 1996) (plaintiff's injury not traceable to any actions by defendant governor who was not responsible for administering challenged statute).

In the present case, the claims against Governor Doyle appear to be premised on the fact that Wis. Stat. § 948.605 is alleged to facially violate the Plaintiffs' constitutional right to keep and bear arms and that Governor Doyle, as chief executive of the State of Wisconsin, is generally vested with the executive power of the state and has a general duty to faithfully execute Wisconsin law, including Wis. Stat. § 948.605. Complaint, ¶¶ 43-44; *see also* Wis. Const. Art. V, § 4. As shown above, however, the mere fact that a state statute is alleged to violate federal law does not mean that an Article III case or controversy exists between the plaintiffs making that allegation and the state's Governor or any other particular state official. Rather, as in any suit, there is a case or controversy only where the named defendant is alleged to have taken or threatened some unlawful action causing injury to a legally protected interest of the plaintiffs.

A proper defendant thus would be a person or entity that has enforced or threatened to enforce the challenged state statute so as to allegedly interfere with the federally protected rights of the plaintiffs. The statute in question here, however, on its face, is enforced not by Wisconsin's Governor, but by law enforcement officers and criminal prosecutors throughout the state. There is nothing in Wis. Stat. § 948.605 that refers to the Governor or gives him any direct or concrete role in administering that statute or applying it to any individuals, including Bernson, Hannan Rock, or other individual members of WCI. The proper defendants in a challenge to Wis. Stat. § 948.605 thus may include law enforcement and/or prosecutorial officials who actually administer and enforce that statute, but do not include Wisconsin's Governor, who has no direct

role in enforcing that statute and whose only alleged dispute with the plaintiffs is that he happens to be the chief executive officer of the state that enacted the challenged law.

Nor does the Complaint allege facts indicating that Governor Doyle himself has taken or threatened to take any action against any of the plaintiffs in this case pursuant to Wis. Stat. § 948.605. On the contrary, the allegations in the Complaint make it clear that, to the extent that Wis. Stat. § 948.605 has been enforced against or otherwise applied to Bernson, such actions have been performed either by Officer Kezeske or by other officials or employees of the City of Milwaukee. Similarly, to the extent that Wis. Stat. § 948.605 is alleged to have been enforced against or otherwise applied to Hannan Rock, such actions have been performed either by Sergeant Nethery and Officer Prince, by other officials or employees of the City of Racine, or by the Racine County District Attorney. It is only through these actions pursuant to the challenged statute by certain municipal or county officials or employees that plaintiffs' federally protected interests are alleged to be harmed. The Complaint does not, however, contain any allegations of comparable actions by Governor Doyle and, therefore, fails to allege that the Governor is responsible for any of the harms alleged by the plaintiffs.

Nor have the plaintiffs alleged facts sufficient to show that any relief that could be granted against Governor Doyle would redress any of their claimed injuries. The remedies requested include an injunction against any future enforcement of Wis. Stat. § 948.605 or any other application of that statute against the plaintiffs. *See* Complaint, ¶¶ 58-59. However, because the Governor has no role in applying that statute to any of the plaintiffs, there is no possible action of Governor Doyle's that could conceivably be enjoined that would give the plaintiffs relief from the harms of which they complain. There is simply nothing this Court has the power to order the Governor to do, or not do, that would redress the plaintiffs' claimed injuries. For this reason, too,

plaintiffs have failed to present a case or controversy between themselves and Governor Doyle. *See Hope Clinic v. Ryan*, 195 F.3d 857, 875 (7th Cir. 1999) (no controversy between parties where relief against public officials would be pointless).

### II. PLAINTIFFS' CLAIMS AGAINST GOVERNOR DOYLE ARE BARRED BY THE STATE OF WISCONSIN'S ELEVENTH AMENDMENT IMMUNITY.

The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This provision recognizes a state's sovereign immunity from suit. *See College Sav. v. Florida Prepaid Postsecondary*, 527 U.S. 666, 684 (1999). That immunity "is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of the admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments." *Alden v. Maine*, 527 U.S. 706, 713 (1999).

Eleventh Amendment immunity is jurisdictional "in the sense that it is a limitation on the federal court's judicial power, and therefore can be raised at any stage of the proceedings." *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998). *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) ("the Constitution does not provide for federal jurisdiction over suits against non-consenting States"). Although the terms of the Eleventh Amendment speak only to suits by "Citizens of another State, or by Citizens or Subjects of any Foreign State," the amendment's sweep is greater than that text. Accordingly, a citizen cannot sue his own state even though the amendment only limits citizens of another state. *Hans v. Louisiana,* 134 U.S. 1 (1890). A corporation also cannot sue a state, even though corporations are not mentioned at all.

*Smith v. Reeves*, 178 U.S. 436 (1900). *See also Lac Courte Oreilles Indians v. State of Wis.,* 749 F. Supp. 913, 918 (W.D. Wis. 1990) ("The [Supreme] Court does not consider it determinative that the entity seeking to sue is not one of those referred to specifically in the Eleventh Amendment. Rather, it looks to the nature of the protection granted the states.").

As a result of Eleventh Amendment immunity, there are "only two circumstances in which an individual may sue a State. First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment. . . . Second, a State may waive its sovereign immunity by consenting to suit." *College Sav.*, 527 U.S. at 670. Congress did *not* abrogate Eleventh Amendment immunity in 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979); *Edelman v. Jordan*, 415 U.S. 651, 675-77 (1974). Actions against a state under 42 U.S.C. § 1983 are thus barred unless the state has consented to suit or some other exception to Eleventh Amendment immunity applies. A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). For Eleventh Amendment purposes, such a suit is no different from a suit against the State itself. *Id.* Like actions against the state, therefore, actions against a state official under 42 U.S.C. § 1983 are also barred unless the state has consented to suit or some other exception to Eleventh Amendment immunity applies.

Of course, where a plaintiff seeks a declaration as to the constitutionality of a statute, there is a judicially recognized exception to Eleventh Amendment immunity that allows an action for prospective declaratory or injunctive relief to proceed against a state officer who is charged with administering the challenged statute. *See Ex Parte Young*, 209 U.S. 123 (1908). That exception is based on the legal fiction that the action is not really a suit against the state where the plaintiff is claiming that the officer is acting in the name of the state without constitutional authority. The rationale for subjecting state

officials to suit under this doctrine is that they are stripped of their official or representative character when they injure a plaintiff by threatening or performing illegal acts in the name of the state. *See id.* at 159-60.

The *Ex Parte Young* doctrine thus applies only where two requirements are met. First, the official to be sued must have particular power to enforce the statute in question. *See Ex Parte Young*, 209 U.S. at 157 (defendant state officials must have "some connection with the enforcement of the act" in question) and at 158 (exception applies to "state officers specially charged with the execution of a state enactment alleged to be unconstitutional"). Second, the doctrine requires that the defendant state officials "threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected [by] an unconstitutional act." *Ex Parte Young*, 209 U.S. at 156. *See also Okpalobi*, 244 F.3d at 416-17; *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) ("*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute"); *1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d at 113 (*citing Rode v. Dellarciprete*, 845 F.2d 1195, 1209 n. 9 (3d Cir. 1988)); *Long*, 961 F.2d at 152; *Kelley v. Bd. of Educ. of Nashville & Davidson Cty.*, 836 F.2d 986, 990-91 (6th Cir. 1987). The Fifth Circuit, after a comprehensive analysis of the doctrine, summarized these standards as follows:

> . . . the *Young* principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required "connection," but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty. . . . Thus, any probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute.

*Okpalobi*, 244 F.3d at 416-17.

Unless the above requirements are met, the legal fiction cannot operate because the named state official is not stripped of his official or representative character and the suit against him remains equivalent to a suit against the state that is barred by sovereign immunity. *See Ex Parte Young*, 209 U.S. at 159-60; *Summit Medical Associates, P.C.*, 180 F.3d at 1341; *L.A. Branch NAACP v. L.A. Unified School Dist.*, 714 F.2d 946, 952 (9th Cir. 1983); *Southern Pac. Transp. Co. v. Brown*, 651 F.2d 613, 615 (9th Cir. 1980); *Back*, 933 F. Supp. at 751-52.

The plaintiffs in the present case have failed to satisfy the above requirements. First, the Governor is not charged with the particular duty of enforcing or administering Wis. Stat. § 948.605. Second, Governor Doyle is not alleged to have himself commenced or threatened to commence any proceedings pursuant to that statute. Because the Complaint does not allege that Governor Doyle, pursuant to Wis. Stat. § 948.605, has taken, may take, or could possibly take any unconstitutional action in the name of the state, the Governor retains his official and representative character and Plaintiffs' claims against him are equivalent to claims against the state that are barred by Eleventh Amendment immunity. For this reason, too, all claims again Governor Doyle in this action should be dismissed.

III. THE COMPLAINT DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST GOVERNOR DOYLE BECAUSE IT DOES NOT ALLEGE A CAUSAL RELATIONSHIP BETWEEN ANY CLAIMED INJURY TO A LEGALLY PROTECTED INTEREST OF THE PLAINTIFFS AND ANY ACTION OR POSSIBLE ACTION BY THE GOVERNOR.

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts to state a cause of action as a matter of law. *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998); *see also Leclaire Courts Res. Mgmt. v. Chicago Housing Auth.*, 945 F. Supp. 1107, 1109 (N.D. Ill. 1996). In considering such a motion, the Court must

- 13 -
Case 2:10-cv-00009-PJG   Filed 01/26/10   Page 13 of 16   Document 7

accept as true all well-pleaded factual allegations in the complaint, drawing all reasonable inferences in favor of the plaintiffs. *See Leclaire Courts*, 945 F. Supp. at 1109. "However, the Court need not accept as true conclusory legal allegations." *Id*.

The Complaint in the present case purports to assert causes of action against Governor Doyle under 42 U.S.C. § 1983. Contrary to plaintiffs' apparent assumption, however, that statute does not create a federal cause of action against a state or any state agency or official simply because a state statute is alleged to violate federal law. Rather, it provides a cause of action only against those persons, including government officials, who subject a person or cause a person to be subjected to a deprivation of rights secured under federal law. *See* 42 U.S.C. § 1983. Under that statute, when such a federal deprivation is alleged by virtue of a provision of state law, the defendants who are sued must be persons or entities who engage in allegedly unlawful acts pursuant to the challenged state law, not simply officials of the state that created the statute.

More specifically, the elements of a federal civil rights cause of action are the same as the elements in a typical tort case: (1) a legally recognized duty on the part of the defendant; (2) a breach of that duty by the defendant; (3) injury to the plaintiff; and (4) a causal connection between the breach and the injury. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). Accordingly, a plaintiff must allege some action by the defendant with a causal connection to the plaintiff's claimed injury. *See Beard v. O'Neal*, 728 F.2d 894, 898-99 (7th Cir. 1984); *Lossman v. Pekarske*, 707 F.2d 288, 290-91 (7th Cir. 1983). A higher unit of state government is not responsible for the acts of other government defendants merely because the unlawful acts of those other defendants were done under color of state law. *See Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1355 (7th Cir. 1985). Accordingly, defendants who have not directly participated in causing the plaintiff's injuries are properly dismissed from the litigation. *See id*.

In the present case, as shown in the preceding sections of this brief, the challenged statute is enforced not by the Governor, but by law enforcement officers and criminal prosecutors throughout the state. Nor does the Complaint allege any facts indicating that any actions against any of the plaintiffs pursuant to Wis. Stat. § 948.605 have been taken or threatened by Governor Doyle, but only by municipal officials. As already argued, therefore, the proper parties to defend against plaintiffs' challenge to Wis. Stat. § 948.605 are the municipal officials alleged to have acted pursuant to that statute—not a state Governor who has no direct role in enforcing it.

For the above reasons, the Complaint does not state a claim upon which relief can be granted against Governor Doyle, just as it does not present a case or controversy involving the Governor.

CONCLUSION

For all of the foregoing reasons, defendant James Doyle, in his official capacity as Governor of the State of Wisconsin, respectfully asks that his motion to dismiss be granted and that all claims against him in this case be dismissed on the merits and with prejudice.

Dated this 26th day of January, 2010.

        s/Thomas C. Bellavia
        THOMAS C. BELLAVIA
        Assistant Attorney General
        State Bar #1030182

        Attorney for Defendant Governor James Doyle

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
Telephone: (608) 266-8690
Fax: (608) 267-2223
E-mail: *bellaviatc@doj.state.wi.us*

bellaviatc\cases\misc cases\wisconsin carry\br\2010 01-26 mtd brf.doc